

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>Paul J. Winterhalter, P.C.<br>By: Paul J. Winterhalter (PW-3637)<br>One Greentree Centre<br>10000 Lincoln Drive East, Suite 201<br>Marlton, NJ 08053-1536<br>Telephone: (856) 797-8400<br>Attorneys for the Debtors | Order Filed on June 29, 2015<br>by Clerk<br>U.S. Bankruptcy Court<br>District of New Jersey |
| **In re:**<br><br>**COSMETIC GALLERY, INC.,**<br><br>　　　　　**Debtor** | Case No.:　　13-35688 (ABA)<br><br>Judge:　ANDREW B. ALTENBURG, JR.<br><br>Chapter:　　11 |
|  | **SIXTEENTH INTERIM STIPULATED ORDER AUTHORIZING CONTINUED USE OF CASH COLLATERAL AND OTHER RELIEF** |

AND NOW, this _____ day of _____ 2015, upon consideration of a Motion having first been brought on behalf of First Bank for an order pursuant to 11 U.S.C. 363(e) for an accounting of cash collateral and to restrict the further sale of property of the estate, and due notice having been given to the Debtor, Cosmetic Gallery, Inc. (the "Debtor"), the United States Trustee and all parties who have field a notice of appearance in this bankruptcy proceeding, it is hereby

**DATED: June 29, 2015**

　　　　　　　　　　　　　　　　　　　　Honorable Andrew B. Altenburg, Jr.
　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Court

ORDERED, that

1. **Chapter 11 Filed**. The Debtor filed a petition (the "Petition") for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on November 24, 2013 (the "Petition Date") and is presently operating as a debtor in possession ("DIP") in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

2. **First Bank Pre-Petition Debt**. First Bank and the Debtor have stipulated that prior to the Petition Date, First Bank made three loans to the Debtor or collaterally guaranteed by the Debtor (the "First Bank Pre-Petition Loans") in the original amounts of $1,000,000.00 for a loan dated October 2, 2008, $500,000.00 for a loan dated December 12, 2008 and $434,286.84 for a loan dated March 30, 2012. First Bank made advances on its loan agreements to the Debtor, and Debtor executed an all-asset security agreement in which it pledged all of its assets to secure the repayment of its loan obligations to First Bank. In the loan documents for the First Bank Pre-Petition Loans (the "Pre-Petition Loan Documents"), the Debtor agreed to assume, and pledge its assets as collateral security for, the repayment of the loan obligations outstanding to First Bank. Debtor has acknowledged and confirmed that the present unpaid principal balance outstanding to First Bank is $1,501,327.10 as of November 23, 2013, plus past due interest, costs and fees and continually accruing interest, costs, expenses and fees, including without limitation, First Bank's attorneys' fees.

3. **Valid Lien on All Assets.** The Debtor has reviewed the Pre-Petition Loan Documents and agrees that First Bank has a valid lien on the assets of the Debtor including, without limitation, assets which may be deemed cash collateral. The First Bank financing statement against the Debtor's assets was filed on December 16, 2008 and continued on June 25,

2013. The extent, legality, validity, perfection, enforceability with respect to the Pre-Petition Loan Documents, as well as the pre-petition debt and First Bank's pre-petition liens upon and security interests in the "Pre-Petition Collateral" (as hereinafter defined), are for all purposes subject only to the rights of the U.S. Trustee and any committee of unsecured creditors appointed in this bankruptcy proceeding to challenge the extent, legality, validity, perfection and/or enforceability of First Bank's pre-petition liens upon and security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code.

4. **Pre-Petition Collateral of First Bank**. As security for the First Bank Pre-Petition Loans, the Debtor granted to First Bank valid and perfected liens on and security interests in all of the assets of the Debtor, as more fully and specifically described in the First Bank Pre-Petition Loan Documents and the exhibits and attachments thereto, including, without limitation, personal property assets of inventory, accounts and other rights to payment, equipment, general intangibles, and fixtures, whether then owned or thereafter acquired or arising and all proceeds and products thereof and accessions thereto (collectively the "Pre-Petition Collateral"). The Debtor has acknowledged and agreed that First Bank has, as of the Petition Date, a valid and subsisting, duly perfected lien and security interest on and in the Pre-Petition Collateral.

5. **Cash Collateral**. "Cash Collateral," as defined by Section 363(a) of the Bankruptcy Code, includes post-petition proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in Section 522(b) of the Bankruptcy Code and as the term "proceeds" is described in Uniform Commercial Code Section 9-306.

6. **Necessity and Best Interest**. The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in Chapter 11. The Debtor requires immediate authority to use Cash Collateral as defined herein in order to continue its business operations without interruption toward the objectives of business stabilization and, ultimately, of formulating an effective plan of reorganization. The Debtor's use of Cash Collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estate. First Bank has agreed, pursuant to the terms of this Sixteenth Interim Order, to consent to the continued use of Cash Collateral, not to exceed the amounts reflected in the budget (the "Cash Collateral Budget"), which has been annexed to this Sixteenth Interim Order as Exhibit "A," for the time period from May 1, 2015 through June 30, 2015 (the "Term").

7. **Purposes**. As Stipulated between First Bank and the Debtor, the Debtor is authorized to use Cash Collateral to meet the ordinary cash needs of the Debtor (and for such other purposes as may be approved in writing by the parties who participated in the hearing) for the payment of actual expenses of the Debtor necessary to (a) maintain and preserve its assets, and (b) continue operation of its business, including, but not limited to, payroll and payroll taxes, insurance, rent, and accounting expenses as reflected in the Cash Collateral Budget.

IT IS on this _____ day of _____ 2015, **ORDERED** as follows:

1. **Use of Cash Collateral**.

   a. Subject to the terms and conditions set forth in this Interim Order, the Debtor is authorized to use Cash Collateral, up to the amount of **$824,554.42** for the ordinary and necessary expenses identified in the Cash Collateral Budget covering the period of the Term, but only to fund its necessary regular business operations in the amounts set forth in the Cash

Collateral Budget and subject to the adequate protection rights, liens, and security interests herein and ordered hereby. The parties agree that the Debtor shall be permitted to use Cash Collateral to acquire new inventory to the extent of inventory sold until June 30, 2015 only up to the maximum amount of $508,000.00 for the acquisition of new inventory. The parties agree that line items for expenses shall not vary more than 10% per any particular expense item, which variance shall be permitted as long as it does not cause the Debtor to go over the total budgeted expenses for the Term. To the extent any single item may exceed such variable, the Debtor shall immediately advise counsel for First Bank and the Trial Attorney for the US Trustee of such projected variance, and if consent is not obtained for such additional expenditure, the Debtor shall request authorization to pay the additional expense from the Court.

   2. The Debtor shall deposit all monies from the collection of Pre-Petition receivables into a DIP account that it will maintain at T.D. Bank, N.A. All disbursements pursuant to the Cash Collateral Budget shall be made from the DIP account. Subject only to the right of the US Trustee and any committee of unsecured creditors appointed in this bankruptcy case to review and contest the extent, validity and priority of First Bank's claim or lien during the time period set forth above, First Bank is hereby granted a lien in the DIP account and all other of the Debtor's bank accounts maintained by the Debtor at T.D. Bank, N.A.

   3. First Bank and its agents shall have full access to and the right at any time during normal business hours to inspect the business operations of the Debtor and other collateral upon reasonable advance notice to the Debtor and shall do so in such manner as not to disrupt or interfere with operations. To that end, Debtor shall fully cooperate with First Bank and supply all such information as may be requested by First Bank, and Debtor agrees that First Bank may copy any such books and records which it desires.

4. On May 1, 2015 and every seven days thereafter during the Term, the Debtor shall provide First Bank with the following reports and information with information current thru the date of delivery of the report: (a) inventory report; (b) accounts receivable aging report; (c) gross sales revenues for the period commencing seven days prior to the date of the report and ending at the end of business on the day preceding the date of the report; (d) a statement, prepared and generated by TD Bank, of all activity in the DIP's pre-bankruptcy operating account with TD Bank for the period commencing seven days prior to the date of the report and ending at the end of business on the day preceding the date of the report; (e) a statement, prepared and generated by TD Bank, of all activity in the DIP's post-bankruptcy operating account with TD Bank for the period commencing seven days prior to the date of the report and ending at the end of business on the day preceding the date of the report; (f) a report of all inventory (including a category of the inventory and the cost of the inventory) transferred by the DIP to DiscountBeautyCenter.com, LLC for the period commencing seven days prior to the date of the report and ending at the end of business on the day preceding the date of the report; (g) a report of all payments from DiscountBeautyCenter.com, LLC to the DIP from for the period commencing seven days prior to the date of the report and ending at the end of business on the day preceding the date of the report; and (h) a detailed income and expense statement, including but not limited to inventory acquisition, for the period commencing seven days prior to the date of the report and ending at the end of business on the day preceding the date of the report.

5. Debtor shall not take any action or attempt in any way to grant any security interests in or liens on any of the Pre-Petition Collateral or Post-Petition Collateral, except upon the prior written consent of First Bank and an order of this Court, and in any event, any such

security interests and liens consented to by First Bank shall be subordinate to First Bank's claims, security interests and liens, unless otherwise Order by the Bankruptcy Court.

    5.    **Adequate Protection**. As adequate protection for use of Cash Collateral, the identified parties are GRANTED:

        a.    **Replacement Lien**. Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, First Bank is hereby granted, as security for the diminution in the value of the Pre-Petition Collateral and the use thereof, replacement liens on and security interests in any collateral including, but not limited to, deposit accounts, that arose or arises on or after November 24, 2013 (the "Post-Petition Collateral") to the same extent, validity, and with the same priority which existed prior to the Petition Date in the Pre-Petition Collateral, without impairment to all valid liens in all remaining Pre-Petition Collateral, and all cash and non-cash proceeds thereof, wherever located. Such replacement liens shall be in addition to all liens, security interests and rights of offset existing in favor of the parties prior to the entry of this Interim Order.

        b.    **Cash Payments**. As further adequate protection to First Bank, pursuant to Section 361(1) of the Bankruptcy Code, during the Term, the Debtor shall pay to First Bank the amount of $10,000 prior to May 29, 2015 and $10,000 prior to June 26, 2015 pursuant to the Cash Collateral Budget annexed hereto.

        c.    **Deemed Perfected**. Any replacement lien and security interest required to be granted herein is automatically deemed perfected, valid, effective and enforceable as of the Petition Date without the necessity of the taking possession, filing financing statements, mortgages or other documents. Although not required, upon request by First Bank, the Debtor shall execute and deliver to the respective party any and all UCC Financing Statements, UCC

Continuation Statements, Certificates of Title or other instruments or documents considered by the bank to be necessary in order to perfect the security interests and liens in the Debtor's Post-Petition Collateral and proceeds granted by this Interim Order, and the parties hereto agree that the automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified to the extent necessary to perfect and implement the provisions of the Interim Order. This Interim Order shall be deemed to be a security agreement for the purpose of perfecting liens on and security interests in the Post-Petition Collateral.

        d.    **Default and Default Hearing**. In the event the Debtor defaults or violates any term or condition in this Interim Stipulated Order, its right to use Cash Collateral shall terminate upon written notice to the Debtor and its counsel, and any party, including the Debtor shall be entitled to request a prompt hearing, upon notice to the counsel for the Debtor, to enforce its right hereunder and to request relief from the automatic stay to enforce its rights against the Debtor, the Pre-Petition Collateral, and the Post-Petition Collateral, and such hearing, subject to the convenience of the Court, shall take place within five (5) business days, and the Debtor is deemed to consent to such request for expedited hearing.

        6.    Notwithstanding any other provisions set forth herein, Debtor agrees and acknowledges that the liens and security interests of First Bank granted hereunder shall remain effective until further order of this Court or satisfaction of the debt or alleged debt, if any, secured by such liens.

        7.    All notices required or permitted to be given hereunder shall be in writing and shall be deemed given when delivered personally to or deposited in a nationally known overnight delivery service, addressed to counsel at the addresses specified below their signatures.

8. This Interim Order shall be binding upon the parties, their respective successors and assigns.

9. This Interim Order is not intended nor shall it be construed as any waiver by First Bank of any of its rights or remedies under the Bankruptcy Code or other applicable law including, without limitation, the right to request a modification or termination of the automatic stay provisions of Section 362(a) or to prevent the Debtor's further use of Cash Collateral.

10. Nothing herein is intended or shall be construed as binding First Bank to consenting to Debtor's use of Cash Collateral after the expiration of the Term, unless sooner terminated in accordance with the terms hereof.

11. The Debtor has expressly agreed and is directed to timely file, deposit and properly transmit to all taxing authorities all required payroll tax deposits and sales tax obligations. All post petition federal tax deposits presently on hand withheld from wages shall be immediately transmitted to the Internal Revenue Service by certified or bank check.

12. Nothing herein is intended or shall be construed as a waiver by First Bank of any alleged breach of any of the covenants, conditions, warranties or representations made by Debtor to First Bank in any of the Pre-Petition Loan Documents, and to that end, all of the parties rights, remedies and claims resulting from any such breach or misrepresentation are hereby specifically reserved. In particular, and without limiting the foregoing reservation of rights, this Interim Order shall not be deemed to waive or release any rights of First Bank to pursue rights and remedies, at law or in equity, against the Debtor or any third parties for potential violations of the prior interim cash collateral orders in this bankruptcy proceeding.

13. **Miscellaneous**. This is an interlocutory Order. Nothing contained herein shall be deemed or construed to (a) limit any party to the relief granted herein; or (b) bar any party from

seeking other and further relief (including, without limitation, relief from the terms of this Interim Order for cause shown on appropriate notice to the Debtor and other parties in interest entitled to notice of same). This Interim Order may be modified, extended, supplemented, amended or otherwise changed only upon the express written agreement of the parties hereto and approval by the Bankruptcy Court. No such modifications, extensions, supplements or amendments, however, shall deprive any party of its existing and valid interest in the Pre-Petition Collateral and Post-Petition Collateral.

14. **Hearing**. A hearing on the Debtor's continued use of cash collateral is set for **June 29, 2015 at 10:00 a.m..** at the U.S. Post Office & Federal Courthouse, 401 Market Street, Second Floor, Courtroom No. 4A, Camden, New Jersey.

## COSMETIC GALLERY, INC. Cash Collateral Budget - May 2015

| Revenue | March Budget | March Actual | May Budget |
|---|---|---|---|
| Medford Sales | $ 75,000.00 | $ 73,199.24 | $ 75,000.00 |
| Marlton Sales | $ 100,000.00 | $ 100,520.83 | $ 105,000.00 |
| Wholesale Sales | $ 80,000.00 | $ 82,943.96 | $ 90,000.00 |
| DBC Sales | $ 125,000.00 | $ 138,249.48 | $ 125,000.00 |
| Salon Sales | $ 1,500.00 | $ 1,726.24 | |
| Other income | | | |
| Sales Tax Collected | $ 5,000.00 | $ 3,609.33 | $ 16,000.00 |
| **Total Revenues** | **$ 386,500.00** | **$ 400,249.08** | **$ 411,000.00** |
| | | | |
| **Expenses** | | | |
| Inventory Acquisition | $ 250,000.00 | $ 291,453.57 | $ 260,000.00 |
| | | | |
| First Bank- LOC | $ 5,166.00 | $ 5,166.00 | $ 5,166.00 |
| First Bank-Term Loan | $ 2,634.00 | $ 2,634.00 | $ 2,634.00 |
| First Bank- Second Mortgage | $ 1,281.00 | $ 1,281.00 | $ 1,281.00 |
| Interest Exp- other | | $ 517.24 | |
| Rent -Laurel Springs | $ - | $ - | $ - |
| Rent- Marlton | $ 11,608.00 | $ 17,943.71 | $ 11,608.40 |
| Rent- Marlton CAM Adjustment | | | $ 1,500.00 |
| Rent-Medford | $ 7,000.00 | $ 7,000.00 | $ 7,000.00 |
| Rent-Warehouse | $ 5,000.00 | $ 5,000.00 | $ 4,500.00 |
| | | | |
| Eqpt. Lease-TD Bank | $ 2,138.86 | $ 2,138.86 | $ 2,138.86 |
| Eqpt Lease-Copier | $ 251.45 | $ 251.45 | $ 251.45 |
| | | | |
| Wages- Executives (2) | $ 12,000.00 | $ 11,400.00 | $ 12,000.00 |
| Wages-General | $ 43,000.00 | $ 36,123.70 | $ 40,000.00 |
| Sales Commissions on Wholesale | | | |
| Payroll Taxes | $ 5,500.00 | $ 4,521.85 | $ 5,000.00 |
| | | | |
| Health Insurance | $ 3,500.00 | $ 3,743.19 | $ 3,500.00 |
| Liability Insurance | $ 2,500.00 | | $ 2,500.00 |
| Workers Comp Insurance | $ 1,750.00 | $ 1,452.83 | |
| Vehicle Insurance | | | $ 300.00 |
| Life Ins-Officers | $ 863.00 | | $ 863.00 |
| Life Ins-Buy/Sell | $ 1,075.00 | | $ 1,075.00 |

Case 13-35688-ABA    Doc 253    Filed 06/29/15    Entered 06/30/15 08:39:24    Desc Main
Document      Page 12 of 14

COSMETIC GALLERY, INC. Cash Collateral Budget -May 2015

| | | | |
|---|---:|---:|---:|
| Legal Expense | $ 5,000.00 | | $ 5,000.00 |
| Accounting Expense | $ 2,000.00 | $ 1,335.27 | $ 2,000.00 |
| Bank Charges-Credit Cards | $ 3,000.00 | $ 2,856.87 | $ 3,000.00 |
| Bank Fees | | | $ 750.00 |
| Auto Lease Expense | $ 2,232.00 | $ 2,398.16 | $ 2,500.00 |
| Advertising | $ 2,500.00 | $ 1,359.00 | $ 5,000.00 |
| Utilities/Gas,Electric,Internet | $ 5,000.00 | $ 3,500.24 | $ 5,000.00 |
| Telephone | $ 1,500.00 | $ 884.10 | $ 1,500.00 |
| Sales Taxes- State of NJ | $ 5,000.00 | $ 3,609.33 | $ 11,200.00 |
| Business Supplies | $ 2,000.00 | | $ 2,000.00 |
| Freight Expense | $ 600.00 | $ 104.75 | $ 600.00 |
| Maintenance | $ 250.00 | $ 549.97 | $ 350.00 |
| Office Expenses | $ 1,000.00 | $ 1,781.40 | $ 1,500.00 |
| US Trustee Fees | $ 3,000.00 | | $ 6,500.00 |
| | $ - | | $ - |
| | $ - | | $ - |
| **TOTAL EXPENSES** | **$ 388,349.31** | **$ 409,006.49** | **$ 408,217.71** |
| Projected Operating Profit | ($1,849.31) | $ (8,757.41) | $ 2,782.29 |

## COSMETIC GALLERY, INC.
### Cash Collateral Budget - June 2015

| Revenue | April Budget | April Actual | June Budget |
|---|---|---|---|
| Medford Sales | $ 75,000.00 | $ 69,473.30 | $ 75,000.00 |
| Marlton Sales | $ 100,000.00 | $ 100,812.76 | $ 106,000.00 |
| Wholesale Sales | $ 80,000.00 | $ 114,751.34 | $ 120,000.00 |
| DBC Sales | $ 125,000.00 | $ 118,308.16 | $ 113,000.00 |
| Salon Sales | $ 1,500.00 | $ 1,402.28 | |
| Other income | | | |
| Sales Tax Collected | $ 5,000.00 | $ - | $ 12,000.00 |
| **Total Revenues** | **$ 386,500.00** | **$ 404,747.84** | **$ 426,000.00** |

| Expenses | | | |
|---|---|---|---|
| Inventory Acquisition | $ 250,000.00 | $ 285,449.00 | $ 248,000.00 |
| First Bank- LOC | $ 5,166.00 | $ 5,166.00 | $ 10,000.00 |
| First Bank-Term Loan | $ 2,634.00 | $ 2,634.00 | |
| First Bank- Second Mortgage | $ 1,281.00 | $ 1,281.00 | |
| Interest Exp- other | | $ 652.23 | |
| Rent -Laurel Springs | $ - | $ - | $ - |
| Rent- Marlton | $ 11,608.00 | $ 10,485.90 | $ 11,608.40 |
| Rent- Marlton CAM Adjustment | | $ 136.96 | $ 1,500.00 |
| Rent-Medford | $ 7,000.00 | $ 7,000.00 | $ 7,000.00 |
| Rent-Warehouse | $ 5,000.00 | $ 1,500.00 | $ 5,000.00 |
| Eqpt. Lease-TD Bank | $ 2,138.86 | $ 2,138.86 | $ 2,138.86 |
| Eqpt Lease-Copier | $ 251.45 | $ 251.45 | $ 251.45 |
| Wages- Executives (2) | $ 12,000.00 | $ 11,400.00 | $ 12,000.00 |
| Wages-General | $ 43,000.00 | $ 35,909.73 | $ 45,000.00 |
| Sales Commissions on Wholesale | | | $ 5,000.00 |
| Payroll Taxes | $ 5,500.00 | $ 4,579.00 | $ 5,000.00 |
| Health Insurance | $ 3,500.00 | $ 3,668.19 | $ 3,500.00 |
| Liability Insurance | $ 2,500.00 | | $ 8,000.00 |
| Workers Comp Insurance | $ 1,750.00 | $ 1,449.14 | |
| Vehicle Insurance | | | $ 300.00 |
| Life Ins-Officers | $ 863.00 | | $ 863.00 |
| Life Ins-Buy/Sell | $ 1,075.00 | | $ 1,075.00 |

COSMETIC GALLERY, INC.
Cash Collateral Budget -June 2015

| | | | |
|---|---:|---:|---:|
| Legal Expense | $ 5,000.00 | | $ 5,000.00 |
| Accounting Expense | $ 2,000.00 | $ 1,335.27 | $ 2,000.00 |
| Bank Charges-Credit Cards | $ 3,000.00 | $ 3,276.50 | $ 3,000.00 |
| Bank Fees | | $ 620.00 | $ 750.00 |
| Auto Lease Expense | $ 2,232.00 | $ 2,455.70 | $ 2,500.00 |
| Advertising | $ 2,500.00 | $ 1,359.00 | $ 6,000.00 |
| Utilities/Gas,Electric,Internet | $ 5,000.00 | $ 2,494.54 | $ 5,000.00 |
| Telephone | $ 1,500.00 | $ 1,469.74 | $ 1,500.00 |
| Sales Taxes- State of NJ | $ 5,000.00 | $ 3,609.33 | $ 12,000.00 |
| Business Supplies | $ 2,000.00 | $ 1,521.25 | $ 3,000.00 |
| Freight Expense | $ 600.00 | $ 421.55 | $ 1,000.00 |
| Maintenance | $ 250.00 | $ 549.97 | $ 350.00 |
| Office Expenses | $ 1,000.00 | $ 1,781.40 | $ 1,500.00 |
| US Trustee Fees | $ 3,000.00 | $ 6,500.00 | $ 6,500.00 |
| | $ - | | $ - |
| | $ - | | $ - |
| **TOTAL EXPENSES** | $ 388,349.31 | $ 401,095.71 | $ 416,336.71 |
| Projected Operating Profit | ($1,849.31) | $ 3,652.13 | $ 9,663.29 |